UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Michael Lashon Robinson,<br>　　　　　　　　　　　Plaintiff,<br>vs.<br>H. Ramos,<br>　　　　　　　　　　　Defendant. | Case No.:　13-cv-01715-WQH-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 39]** |
|---|---|

HAYES, Judge:

　　The matter before the Court is Defendant's motion to dismiss Plaintiff's (a) Eighth Amendment claim with respect to conditions of confinement, (b) Fourteenth Amendment claim, and (c) First Amendment claim. (ECF No. 39).

**I.　INTRODUCTION**

　　On July 22, 2013, Plaintiff Michael Robinson commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 while incarcerated at California State Prison – Los Angeles County. (ECF No. 1). Plaintiff filed the operative complaint, the First Amended Complaint ("FAC"), on October 12, 2014, pursuant to 42 U.S.C. § 1983, alleging Defendant Correctional Officer H. Ramos violated Plaintiff's constitutional rights while he

1

was housed at the Richard J. Donovan Correctional Facility in San Diego, California.[1] (ECF No. 38). Specifically, Plaintiff alleges Defendant used excessive force against him and exposed him to unconstitutional conditions of confinement, in violation of the Eighth Amendment; denied him law library access and evidence, in violation of the Due Process Clause of the Fourteenth Amendment; and denied him yard time and communication with friends and family, in violation of the First Amendment. (ECF No. 38). Plaintiff requests injunctive relief and damages.

On November 4, 2014, Defendant filed the motion to dismiss. (ECF No. 39). On December 5, 2014, Plaintiff filed an opposition. (ECF No. 43). On January 9, 2015, Defendant filed a reply. (ECF No. 45).

## II.   ALLEGATIONS OF THE FAC

On July 3, 2011, Plaintiff was incarcerated at the Richard J. Donovan Correctional Facility. (ECF No. 38 at 1). Plaintiff alleges that on July 3, 2011, Defendant and another officer subjected Plaintiff to a clothed body search. *Id.* at 3. Plaintiff was then ordered to remove his shoes because they had black laces, but he was reluctant to do so because they were purchased from an approved venue. *Id.* Consequently, Plaintiff was then placed in a holding cage outside of the correctional facility's program office. *Id.* During the escort to

---

[1] It appears that Plaintiff is no longer in custody. On May 18, 2015, Plaintiff filed a notice of change of address, providing an address that does not appear to be a correctional facility. (ECF No. 51).

1 the holding cage, Plaintiff argued with Defendant concerning Plaintiff's shoes. *Id*. Once
2 inside the holding cage, Plaintiff was then ordered to remove his clothes and shoes, which
3 he did. *Id*. at 4.

4     One and a half hours later, Plaintiff communicated to Correctional Officer
5 Verkouteren that he wanted to apologize to Defendant for arguing with him about
6 Plaintiff's shoes. *Id.* Correctional Officer Verkouteren returned Plaintiff's clothing to him,
7 and he got dressed. *Id.* About an hour later, Defendant returned with other correctional
8 officers to the holding cage. *Id.* The officers opened the door to the holding cage, and
9 Plaintiff again indicated he wished to apologize to Defendant. *Id.* As Plaintiff apologized,
10 Defendant stepped closer to Plaintiff and slapped Plaintiff's left arm. *Id*. at 5. Plaintiff
11 continued to apologize and Defendant then struck the left side of Plaintiff's face with an
12 "open fist," which caused Plaintiff to hit the back of his head on the holding cage. *Id.*[2] At
13 this time, correctional officers restrained Defendant and secured Plaintiff inside the holding
14 cage. *Id.* Plaintiff did not receive medical attention until four days later, when he was
15 given medication. *Id.*

16     Plaintiff was subsequently housed in an unofficial administrative segregation unit,
17 designated as an overflow facility, for approximately eight weeks pending an investigation

---

20 [2] Plaintiff alleges he had migraine headaches in the days following the alleged altercation between Plaintiff and Defendant. *Id.* at 6.

3

1   into the aforementioned verbal and physical altercation with Defendant. *Id.* at 5-6, 10.[3] In
2   this particular unit, Plaintiff was housed with general population inmates. *Id.* at 7. Plaintiff
3   contends he should not have been placed in such a general population unit because he had
4   protective custody status and because he was a sensitive needs yard (SNY) prisoner. *Id.*

5   As a result of being housed in an unofficial administrative segregation unit, Plaintiff
6   was denied access that he would otherwise have had in an official administrative
7   segregation unit. *Id.* at 6-7, 10. Specifically, for approximately eight weeks, he was denied
8   access to the law library, pen fillers, envelopes, stamps, paper, the yard and prison canteen,
9   and consistent showers and shave. *Id.* at 7, 10-11. Plaintiff alleges that he would have
10  been given access to the aforementioned things if he was housed in an official
11  administrative segregation unit. *Id* at 7, 10. Plaintiff requested to be transferred to an
12  official administrative segregation unit, but those requests were denied. *Id*. at 10.

13  Plaintiff was unable to file a standard California Department of Corrections and
14  Rehabilitation (CDCR) internal inmate appeal about his conditions of confinement during
15  the approximately eight weeks he was housed in the unofficial administrative segregation
16  unit. *Id.* at 7, 10. The prison appeals coordinator requires appeals be written in pen. *Id.* at
17  7. Plaintiff did not have access to pen fillers. *Id.* Therefore, he could not file his appeal

---

[3] Plaintiff alleges a video interview and written statement were taken as part of the investigation into the July 3, 2011 altercation. *Id*. at 8. Plaintiff also alleges the video and statement were lost and then resurfaced during Defendant's disciplinary hearing regarding this investigation. *Id*.

until the end of September, 2011. *Id.* at 8.[4]

Additionally, while housed in this general population unit, Plaintiff states his food was routinely contaminated by other inmates. *Id.* at 7. Plaintiff was moved to an official administrative segregation unit at the end of August, 2011, in response to his complaints about the contamination of his food. *Id.*

Plaintiff provided a written statement and video interview to the prison staff investigating the July 3, 2011 altercation with Defendant. *Id*. at 5. In September of 2011, the facility captain requested that Plaintiff provide another written statement and video interview because the originals were lost. *Id.* at 8. Unknown officials interviewed Plaintiff about the July 3, 2011 altercation in November of 2011. *Id.* In February of 2012, "internal affairs" held a disciplinary hearing for Defendant Ramos, and Plaintiff appeared to testify. *Id.* at 9. At the disciplinary hearing, "some of the missing evidence … resurfaced through an attorney representing Ramos." *Id.*

### III.   RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss may be based on either a "'lack of a cognizable legal theory' or 'the

---

[4] Plaintiff does not allege that this appeal was rejected as untimely.

absence of sufficient facts alleged under a cognizable legal theory.'" *Hinds Inv., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (quoting *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009). A court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). With respect to an inmate who proceeds *pro se*, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014).

**IV.   DISCUSSION**

    **A.   Eighth Amendment Conditions of Confinement Claim**

Plaintiff alleges that the conditions of his confinement violated his Eighth Amendment rights and that Defendant is responsible for this violation. (ECF No. 38 at 2).

Defendant argues Plaintiff's Eighth Amendment conditions of confinement claim should be dismissed because Plaintiff fails to allege sufficient facts showing both that the conditions of his confinement violated the Eighth Amendment and that Defendant is responsible for the conditions alleged.[5]  (ECF No. 39-1 at 4).  Plaintiff disagrees, arguing that his FAC alleges sufficient facts to state a claim against Defendant for unconstitutional conditions of confinement.  (ECF No. 43 at 2).

In order for a prison official to be held liable for alleged unconstitutional conditions of confinement, the prisoner must allege facts that satisfy a two-prong test.  *Peralta v. Dillard*, 774 F.3d 1076, 1082 (9th Cir. 2014) (citing *Farmer v. Brennen*, 511 U.S. 825, 837 (1994)).  The first prong is an objective prong.  To satisfy this prong, the deprivation must be "sufficiently serious."  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 834).  In order to be sufficiently serious, the prison official's "act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'"  *Id*.  In other words, the objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).  Additionally, the court may consider the duration of deprivation when assessing the prisoner's conditions of

---

[5] The Court does not address the excessive force claim under the Eighth Amendment because Defendant's motion does not seek to dismiss it.

confinement. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978); *see also Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

The second prong focuses on the subjective knowledge of the prison official. Under this subjective prong, the prisoner must show that the prison official acted with "deliberate indifference" to excessive risk to the prisoner's health and safety. *Peralta*, 774 F.3d at 1082 (9th Cir. 2014) (citing *Farmer*, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. *Id.* (citing *Farmer*, 511 U.S. at 842); *see also Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991). Such an act or omission requires a showing of the prison official's personal participation in the alleged rights deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014).

### 1. Sufficiently Serious Standard of the Objective Prong

In this case, the sufficiently serious standard of the objective prong is not met. Plaintiff alleges he had protective custody status and SNY status at the time of the alleged altercation with Defendant. Plaintiff alleges his placement with general population inmates housed in the unofficial administrative segregation unit violated his protective status. (ECF No. 38 at 7). Plaintiff does not allege that he suffered any physical harm in the unofficial administrative segregation unit. Rather, he alleges vaguely that general population inmates were responsible for serving him "contaminated food." *Id.* Plaintiff does not plead any

1  facts to support his allegation that the food he was served was contaminated. *Id.*[6] Plaintiff
2  fails to otherwise articulate how mixing with general population inmates threatened his
3  personal safety or deprived him of life's necessities.

4  Plaintiff also alleges he was deprived of consistent showers and shave for
5  approximately eight weeks. (ECF No. 38 at 7, 10, 11). Plaintiff does not plead any facts
6  demonstrating the extent to which he was denied consistent showers and shave. *Id.* at 7.

7  Finally, Plaintiff alleges that following the altercation with Defendant, Plaintiff did
8  not receive medical attention for four days. However, Plaintiff has failed to allege facts
9  showing that his medical condition required immediate medical attention. *See Wood v.*
10 *Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (finding that a delay of several days in
11 providing medical treatment did not amount to an Eighth Amendment violation "where the
12 only remedy immediately available was a prescription for painkillers"). Thus, Plaintiff
13 fails to satisfy the objective prong with factual allegations of sufficiently serious
14 deprivations.

15 As pled, Plaintiff fails to articulate facts plausibly demonstrating his conditions of

---

[6] Adequate food is a basic human need protected by the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). However, the Ninth Circuit has explained that under the Eighth Amendment, prisoners need only receive food that is adequate to maintain health—the food need not be tasty or aesthetically pleasing. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.") (citation omitted). Thus, without more, Plaintiff's vague allegation that his food was contaminated does not survive the objective prong.

confinement were sufficiently serious to constitute a violation of the Eighth Amendment. Therefore, the objective prong is not met.

### 2.     Deliberate Indifference Standard of the Subjective Prong

The deliberate indifference standard of the subjective prong is also not met. Plaintiff attributes the deprivations he suffered to the prison's decision to transfer Plaintiff to an unofficial administrative segregation unit pending the investigation of the July 3, 2011 altercation between Plaintiff and Defendant. *Id*. at 5, 10. Plaintiff, however, fails to connect his conditions of confinement allegations to Defendant Ramos, who is the only defendant in this lawsuit.

For example, Plaintiff does not plead facts showing Defendant made, participated in, or should have participated in the prison's decision to house Plaintiff in an unofficial administrative segregation unit. Nor does Plaintiff plead facts showing Defendant knew about, or was responsible for, the complained of conditions of confinement in the unofficial segregation unit. Therefore, because there is no nexus between Defendant's acts or omissions and the alleged risks and rights deprivations at issue, the deliberate indifference standard of the subjective prong is not met.[7] *Monell*, 436 U.S. at 691-92.

---

[7] In response to Defendant's motion to dismiss, Plaintiff argues for the first time that Defendant was inadequately trained and because of this poor training, he behaved recklessly. (ECF No. 43 at 3). First, this argument is not pled in or supported by the FAC. Second, such an argument lacks a requisite description of an act or omission by Defendant resulting in Plaintiff being denied a life necessity.

The Court concludes that Plaintiff fails to plead facts satisfying the objective and subjective prongs of the Eighth Amendment conditions of confinement test. Defendant's motion to dismiss Plaintiff's Eighth Amendment conditions of confinement claim is granted.

### B.     First and Fourteenth Amendment Claims

Plaintiff alleges that Defendant violated his First and Fourteenth Amendment rights. (ECF No. 38 at 9, 11; ECF No. 43 at 3). Plaintiff alleges he was deprived of the ability to communicate with friends and family for approximately eight weeks in violation of his First Amendment rights. (ECF No. 38 at 11). Plaintiff asserts the following Fourteenth Amendment due process violations: (1) he was housed in an unofficial administrative segregation unit where he experienced deprivations he would not have otherwise experienced in an official administrative segregation unit; (2) he was denied access to the internal prison appeal system; and (3) evidence concerning his altercation with Defendant disappeared and then reappeared at the time of his hearing. *Id.* at 10.

Plaintiff alleges that Defendant is responsible for the altercation that led to the housing transfer, and thus the resulting alleged deprivations. *Id.* at 10-11. Defendant contends that Plaintiff's First and Fourteenth Amendment claims should be dismissed because Plaintiff fails to allege sufficient facts to show Defendant is responsible for the housing decision and alleged subsequent Fourteenth Amendment deprivations. (ECF No.

39-1 at 6). [8]

### 1. The Alleged Deprivations

In purported violation of his First Amendment rights, Plaintiff claims he was transferred to an unofficial administrative segregation unit for eight weeks pending an investigation into the July 3, 2011 altercation with Defendant. (ECF No. 38 at 5, 10-11). This unit is allegedly designated as an overflow unit for inmates assigned to be housed in administrative segregation. In this unit, Plaintiff alleges he was denied access to the recreational yard where he could communicate with other inmates. *Id.* at 11. Additionally, Plaintiff alleges he was denied access to envelopes, stamps, paper, and the prison canteen. *Id.* at 10-11. Plaintiff contends that, as a result, he could not communicate with family. *Id.* at 11.

Further, in purported violation of his Fourteenth Amendment rights, Plaintiff alleges that he was denied access to the law library, pens, envelopes, stamps, paper, and prison canteen for approximately eight weeks. *Id.* at 10. Plaintiff alleges that, as a result, there was an approximately eight-week delay in filing his internal prison appeals. *Id.* Plaintiff also alleges his Fourteenth Amendment rights were violated with respect to his grievance

---

[8] In his reply brief, Defendant contends that Plaintiff did not respond to Defendant's argument that his First Amendment claim should be dismissed and that the claim is therefore waived. (ECF No. 45 at 2). While silence could be construed as consent to dismissal of this claim, Plaintiff's Fourteenth Amendment claim is evaluated in this Order as if it were opposed.

against Defendant Ramos. *Id.* Plaintiff alleges that his written statement and video interview disappeared and did not resurface until the day of Defendant Ramos' hearing. *Id.* at 9.

### 2. Defendant's Personal Participation

In order for a prison official to be held liable under § 1983, the prisoner must show the prison official's personal participation in the alleged rights deprivation. *Monell*, 436 U.S. at 691-92; *see also Colwell,* 763 F.3d at 1070. A showing of personal participation, within the meaning of § 1983, requires allegations that the prison official "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Redman*, 942 F.2d at 1439 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Plaintiff's alleges that the resulting due process and First Amendment violations were "cause[d] by c/o H. Ramos' battery on Plaintiff." (ECF No. 38 at 10-11). As pled, Plaintiff's altercation with Defendant was the impetus for a housing transfer. *Id.* Plaintiff allegedly suffered deprivations in the unofficial administrative segregation unit that he would not have otherwise suffered in an official administrative segregation unit. *Id.* at 6. However, Plaintiff fails to allege facts from which it may be plausibly inferred that Defendant's acts or omissions caused the deprivations at issue for purposes of § 1983 liability.

For example, as discussed above, Plaintiff does not plead any facts that plausibly

show Defendant made or participated in the decision to place Plaintiff in an unofficial administrative segregation unit pending the prison's investigation. Indeed, Plaintiff does not allege Defendant had responsibilities concerning housing placement or the conditions thereof, nor does he allege facts showing that Defendant's input was ever sought in making housing decisions. Therefore, Plaintiff's First and Fourteenth Amendment claims are dismissed for failure to plead facts showing Defendant's personal participation in the alleged constitutional violations.

The only alleged deprivation that did not result from the housing transfer is the alleged temporary disappearance of Plaintiff's video interview and written statements about his altercation with Defendant. Plaintiff sufficiently alleges Defendant's personal participation in the disappearance of this evidence by pleading that the evidence resurfaced in the hands of Defendant's attorney at Defendant's disciplinary hearing. (ECF No. 38 at 9). Plaintiff, however, fails to articulate how this alleged disappearance violated his constitutional rights or caused him any injury. *See Lewis v. Casey*, 518 U.S. 343, 349, 354-55 (1996) (a constitutional right of access to the courts claim "must show actual injury"); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.").

Defendant's motion to dismiss Plaintiff's First and Fourteenth Amendment claims is granted.

## C. Defendant's Eleventh Amendment Defense

Plaintiff sues Defendant in both his official and individual capacity. (ECF No. 38 at 2). In his request for relief, Plaintiff seeks injunctive, compensatory, and punitive damages. *Id*. at 13. Defendant contends that he is immune to suit for monetary damages in his official capacity. (ECF No. 39-1 at 7).

The Eleventh Amendment bars a prisoner's § 1983 claims against state actors sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). However, the Eleventh Amendment does not bar claims for damages against state officials for actions taken in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *see also Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394-95 (9th Cir. 1997) (citing *Pena v. Gardner,* 976 F.2d 469, 472-73 (9th Cir. 1992)). A prisoner can establish personal liability in a § 1983 action by showing the prison official acted under color of state law in deprivation of a federal right. *See Hafer*, 502 U.S. at 25.

Plaintiff contends that Defendant is not immune to suit for damages in his official capacity because he is a correctional officer. (ECF No. 43 at 4). However, the case law does not support such an argument. Defendant was acting under color of state law as an on-duty correctional officer at the time of the alleged deprivation of Plaintiff's constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Therefore, Defendant is immune to suit for damages in his official capacity, but not immune to suit for damages in his individual capacity.

Defendant's motion to dismiss Plaintiff's claim for monetary damages against Defendant in his official capacity is granted. Because the Court finds that amendment would be futile, dismissal is with prejudice.

## V. CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss (ECF No. 39) is GRANTED. Plaintiff's Eighth Amendment conditions of confinement claim, Fourteenth Amendment due process claim, and First Amendment claim are dismissed without prejudice. Plaintiff's request for damages against Defendant in his official capacity is dismissed with prejudice.

No later than **thirty (30) days** from the date of this Order, Plaintiff may file a motion for leave to amend the FAC, accompanied by a proposed second amended complaint. If no motion is filed by that time, this case shall proceed on the remaining portions of the FAC.

Dated: August 4, 2015

Hon. William Q. Hayes
United States District Judge